McGREGOR W. SCOTT
United States Attorney
SAMUEL WONG
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**
APR 05 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

AMERICAN BIODIESEL, INC., dba
COMMUNITY FUELS,
CHRISTOPHER YOUNG, and
JEREMIAH YOUNG,

    Defendants.

CASE NO. 2:18-CR-0068 KJM

VIOLATIONS: 18 U.S.C. § 371 - Conspiracy; 33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and(b) - Tampering with Monitoring Equipment (12 Counts); 33 U.S.C. §§ 1317(d), 1319(c)(2)(A); 40 C.F.R. § 403.5(b)(2); 18 U.S.C. § 2(a) and(b) - Unlawful Discharge of Industrial Wastewater (2 Counts); 18 U.S.C. § 1001(a)(2) - False Statements; 18 U.S.C. § 1512(b)(3) - Witness Tampering

# I N D I C T M E N T

COUNT ONE: [18 U.S.C. § 371 - Conspiracy]

    The Grand Jury charges: T H A T

    AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS,
CHRISTOPHER YOUNG, and
JEREMIAH YOUNG,

defendants herein, as follows:

**INTRODUCTORY ALLEGATIONS**

At all times material to this Indictment:

    1.    Defendant AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS, (sometimes hereafter referred to as "COMMUNITY FUELS"), was registered as a corporation with the State of California on or about December 3, 2004. AMERICAN BIODIESEL, INC., registered "COMMUNITY

INDICTMENT

1

FUELS" with San Joaquin County, California, as a fictitious business name on or about March 30, 2006. COMMUNITY FUELS' corporate headquarters is located at 171 Saxony Road, Suite 202, Encinitas, California. Beginning in or about 2009 and continuing to the present, COMMUNITY FUELS has been engaged in the commercial manufacture and sale of biodiesel fuel. COMMUNITY FUELS operates a biodiesel fuel manufacturing plant located at 809-C Snedeker Avenue, Stockton, California 95203. COMMUNITY FUELS' biodiesel manufacturing plant is located on real property leased from the Port of Stockton within the Eastern District of California.

2. Beginning in or about 2009, defendant CHRISTOPHER YOUNG was employed as COMMUNITY FUELS' Director of Operations and was COMMUNITY FUELS' highest-ranking employee at its manufacturing plant at 809-C Snedeker Avenue, Stockton. In his capacity as Director of Operations, CHRISTOPHER YOUNG controlled and supervised all aspects of COMMUNITY FUELS' biodiesel fuel manufacturing plant and directed the work tasks of all subordinate employees at the plant.

3. Beginning in or about 2014, defendant JEREMIAH YOUNG was employed as an Assistant Operator with COMMUNITY FUELS at its biodiesel manufacturing plant in Stockton. JEREMIAH YOUNG is the younger brother of CHRISTOPHER YOUNG. In his capacity as Assistant Operator, JEREMIAH YOUNG performed various work-related tasks in the manufacture of biodiesel fuel at the plant.

### A. BACKGROUND OF THE CLEAN WATER ACT AND ITS PRETREATMENT STANDARDS

4. The Clean Water Act, found at Title 33, United States Code, Section 1251 et seq., is the Nation's primary water pollution control statute and is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Title 33, United States Code, Section 1251(a). The Clean Water Act regulates the direct discharge of pollutants to waters of the United States through the National Pollutant Discharge Elimination System ("NPDES") permit program. Since 1972, publicly owned treatment works, such as municipal sewage treatment systems, have been subject to the NPDES permit program.

5. Municipal sewage treatment systems play a critical role in water pollution abatement because they receive both domestic sewage and industrial wastewater through publicly owned treatment

works sewer systems. Yet, most publicly owned treatment works are not designed to treat every type of industrial waste. Certain industrial wastewater may cause costly damage to publicly owned treatment works, while other wastewater may cause the publicly owned treatment works to violate their NPDES permits.

6. To address such concerns, Congress enacted in Title 33, United States Code, Section 1281 et seq., both a major financing program to encourage and assist in the construction and upgrading of sewer systems and treatment plants, and a regulatory program for publicly owned treatment works and their users. Congress directed the United States Environmental Protection Agency ("EPA") in Title 33, United States Code, Section 1311(b)(1)(B) to develop effluent limitations for discharges by publicly owned treatment works, applied the existing NPDES regulatory program to publicly owned treatment works pursuant to Title 33, United States Code, Section 1311(a), and established criminal enforcement provisions, pursuant to Title 33, United States Code, Section 1319. Congress also directed the EPA to determine and set pretreatment standards for discharges into publicly owned treatment works, and established a specific prohibition against operating in violation of such pretreatment standards, pursuant to Title 33, United States Code, Section 1317(b), (c) and (d).

### B. CRIMINAL ENFORCEMENT OF THE CLEAN WATER ACT

7. The Clean Water Act makes it unlawful for any owner or operator of a source to violate a pretreatment standard and imposes criminal sanctions for negligent or knowing violations of such standards after the effective date of such standards as set forth in Title 33, United States Code, Sections 1319(c)(1) and (2), and 1317(d).

8. The Clean Water Act also makes it a felony to knowingly falsify, tamper with or render inaccurate any monitoring device or method required to be maintained by the Clean Water Act as set forth in Title 33, United States Code, Section 1319(c)(4).

9. The Clean Water Act defines an "owner or operator" as "any person who owns, leases, operates, controls, or supervises a source" in Title 33, United States Code, Section 1316(4).

10. The Clean Water Act does not define the term "source", but does define in Title 40, Code of Federal Regulations, Section 403.3(m)(1), the term "New Source" to include, in pertinent part, any building, structure, facility or installation from which there is or may be a discharge of pollutants which

were constructed after the pretreatment regulations were enacted.

11. The Clean Water Act defines the term "pollutant" to include, among other things, sewage, garbage, chemical waste, industrial waste, agricultural waste, and biological materials in Title 33, United States Code, Section 1362(6).

12. The Clean Water Act regulations in Title 40, Code of Federal Regulations, Section 403.3(q) define the term "publicly owned treatment works" as a treatment works owned by a state or municipality that includes any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or liquid industrial wastes; the term includes sewers, pipes and other conveyances that convey wastewater to a publicly owned treatment works.

13. The Clean Water Act regulations prohibit the discharge to a publicly owned treatment works of a pollutant that will cause corrosive structural damage to the publicly owned treatment works, including an acidic/corrosive wastewater discharge with a pH lower than 5.0 unless the publicly owned treatment works is specifically designed to accommodate such discharges as set forth in Title 40, Code of Federal Regulations, Section 403.5(b)(2).

14. The Clean Water Act pretreatment regulations in Title 40, Code of Federal Regulations, Section 403.12 require industrial wastewater dischargers to submit periodic reports, including reports of specific discharges, and to monitor and analyze discharges.

15. While California, and its local municipalities and subdivisions have been delegated primacy to implement and enforce the Clean Water Act, the EPA retains authority to enforce violations of NPDES permits and pretreatment standards.

### C. COMMUNITY FUELS' BIODIESEL MANUFACTURING OPERATION

16. COMMUNITY FUELS manufactures biodiesel fuel through a chemical and heat process. COMMUNITY FUELS' chemical process to manufacture biodiesel fuel involves reacting methanol with animal or vegetable fats and oils to generate a fatty acid methyl ester, which is further processed into biodiesel fuel and glycerin. COMMUNITY FUELS' commercial manufacture of biodiesel fuel uses large amounts of water that becomes polluted with methanol, glycerin, oils and fats, and acids. COMMUNITY FUELS' industrial wastewater constituted a pollutant within the meaning of Title 33, United States Code, Section 1362(6). COMMUNITY FUELS did not have the ability or capacity to

clean the large amounts of industrial wastewater polluted during its biodiesel fuel manufacturing process.

17. The City of Stockton Municipal Utilities Department ("City of Stockton") operates a publicly owned treatment works (sometimes referred to hereafter as "sewer system") which is subject to a NPDES Permit issued by the Central Valley Regional Water Quality Control Board. The City of Stockton provides wastewater treatment in the geographic area in which COMMUNITY FUELS operates its biodiesel fuel manufacturing plant, but, in order to help ensure the proper and safe operation of its wastewater treatment plant, the City of Stockton prohibited COMMUNITY FUELS from discharging certain levels of pollutants in, and/or excess quantities of, wastewater.

18. The City of Stockton maintains a wastewater pretreatment program and issued ongoing periodic permits to discharge wastewater to COMMUNITY FUELS. COMMUNITY FUELS was unable to implement an effective pretreatment system to remove sufficiently the pollutants in its industrial wastewater to allow the discharge of its industrial wastewater into the City of Stockton sewer system. Thus, COMMUNITY FUELS was a source of discharges of pollutants subject to the Clean Water Act's pretreatment regulations. Under the recurring permits issued by the City of Stockton pursuant to the Clean Water Act, COMMUNITY FUELS was authorized to discharge only wastewater meeting certain requirements into the City of Stockton sewer system.

19. COMMUNITY FUELS' periodic wastewater discharge permits issued from the City of Stockton mandate, among other requirements, the continuous monitoring and recording of flow (the quantity of wastewater discharged to the sewer), as well as continuous monitoring and recording of pH (measuring the acidity/alkalinity of the wastewater). The permit also requires monitoring of the concentration of methanol in the wastewater.

20. COMMUNITY FUELS' wastewater discharge permits limit total wastewater flow to the sewer at 210,000 gallons per month. The pH of the wastewater is required to stay between 5.0 and 10.0, and methanol concentration may not exceed 117 milligrams per liter. Any wastewater not meeting the permitted requirements is prohibited from discharge into the City of Stockton sewer system. COMMUNITY FUELS represented to the City of Stockton that COMMUNITY FUELS would transport its unpermitted wastewater offsite by tanker truck to an appropriate wastewater disposal facility for

treatment, namely, the East Bay Municipal Utility District in Oakland, California.

21. Beginning not later than in or about March 2009 and continuing to on or about December 1, 2016, in the Counties of San Joaquin and El Dorado, State and Eastern District of California, and elsewhere, defendants AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS, CHRISTOPHER YOUNG, and JEREMIAH YOUNG, did knowingly and intentionally conspire with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

(1) discharge polluted industrial wastewater into the City of Stockton sewer system, in violation of COMMUNITY FUELS' permit issued by the City of Stockton and the Clean Water Act, specifically Title 33, United States Code, Section 1317(d) and Title 40, Code of Federal Regulations, Sections 403.5(b)(2) and 403.12(h);

(2) tamper with and render inaccurate the monitoring devices and methods, which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring the pH level of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system, in violation of Title 33, United States Code, Section 1319(c)(4); and

(3) tamper with and render inaccurate the monitoring devices and methods, which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring and recording the flow and volume of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system, in violation of Title 33, United States Code, Section 1319(c)(4).

**MANNER AND MEANS**

22. During the time period beginning in or about 2009 and continuing through December 1, 2016, it was a recurring practice for CHRISTOPHER YOUNG to direct subordinate employees at COMMUNITY FUELS' biodiesel fuel manufacturing plant to discharge hundreds of thousands of gallons of polluted industrial wastewater by various unlawful means, including: (1) application of such wastewater to the grounds at COMMUNITY FUELS via landscaping sprinklers in contradiction of its representations in its monthly reports to the City of Stockton that its "Process wastewater is sent off site."; and (2) discharge wastewater directly into the City of Stockton sewer system after tampering with pH, and flow and volume monitoring devices and methods to render the pH, and flow and volume

monitoring devices and methods inaccurate and/or bypassing pH, and flow and volume monitoring devices and methods so that the pH and volume of COMMUNITY FUELS' industrial wastewater were not accurately monitored and/or recorded. Pursuant to CHRISTOPHER YOUNG's directions, various employees performed these unlawful tasks to discharge COMMUNITY FUELS' industrial wastewater.

**OVERT ACTS**

23. In furtherance of the conspiracy and to effect the objects thereof, the defendants named below committed the overt acts, among others, alleged below:

24. On or about the dates alleged below, defendants AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS and CHRISTOPHER YOUNG, acting through their subordinate employees, did knowingly tamper with and render inaccurate the monitoring devices and methods, which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring and recording the pH level, and flow and volume of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system:

DATE OF OVERT ACT

April 8, 2016;

June 14, 2016;

June 20, 2016; and [handwritten correction "20 MJB" over "16"]

July 20, 2016.

25. On or about the following dates, in San Joaquin County, within the State and Eastern District of California, defendants COMMUNITY FUELS, CHRISTOPHER YOUNG, and JEREMIAH YOUNG, either personally or acting through their subordinate employees, did knowingly tamper with and render inaccurate the monitoring devices and methods, which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring and recording the pH level, and flow and volume of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system:

DATE OF OVERT ACT

April 18, 2016;

April 21, 2016;

April 22, 2016;

May 4, 2016;

July 21, 2016;

July 26, 2016;

November 19, 2016; and

December 1, 2016.

26. On or about July 21, 2016, defendants COMMUNITY FUELS and CHRISTOPHER YOUNG, and JEREMIAH YOUNG, either personally or acting through their subordinate employees, operated and caused the discharge of industrial wastewater that had a pH of less than 5.0 into the blowdown tank designated Tank 511 that discharged into the City of Stockton sewer system.

27. On or about December 1, 2016, in San Joaquin County, within the State and Eastern District of California, defendants COMMUNITY FUELS, CHRISTOPHER YOUNG, and JEREMIAH YOUNG, either personally or acting through their subordinate employees, operated and caused the discharge of industrial wastewater that had a pH of less than 5.0 into a floor cleanout drain that discharged into the City of Stockton sewer system.

All in violation of Title 18, United States Code, Section 371.

COUNTS TWO THROUGH FIVE: [33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and(b) - Tampering with Monitoring Equipment]

The Grand Jury further charges: T H A T

AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS, and
CHRISTOPHER YOUNG,

defendants herein, as follows:

1. Paragraphs 1, 2, and 4 through 20 of Count One are realleged and incorporated herein, as if fully set forth.

2. On/in or about the following dates, in San Joaquin County, within the State and Eastern District of California, defendants COMMUNITY FUELS and CHRISTOPHER YOUNG, both operators of a source located at 809-C Snedeker Avenue, Stockton, California, did knowingly: (1) tamper with and rendered inaccurate the monitoring devices and methods, which COMMUNITY FUELS was

required to maintain under its permit issued by the City of Stockton, for measuring the pH level of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system; and (2) tamper with and render inaccurate the monitoring devices and methods, which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring and recording the flow and volume of the polluted industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system:

| COUNT | DATE |
|---|---|
| TWO | April 8, 2016 |
| THREE | June 14, 2016 |
| FOUR | June 20, 2016 [MJB] |
| FIVE | July 20, 2016 |

All in violation of Title 33, United States Code, Sections 1317(d), 1319(c)(4), and Title 18, United States Code, Section 2(a) and (b).

<u>COUNTS SIX THROUGH THIRTEEN</u>:  [33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and (b) - Tampering With Monitoring Equipment]

The Grand Jury further charges: T H A T

AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS,
CHRISTOPHER YOUNG, and
JEREMIAH YOUNG,

defendants herein, as follows:

1. Paragraphs 1 through 20 of Count One are realleged and incorporated herein, as if fully set forth.

2. On or about the following dates, in San Joaquin County, within the State and Eastern District of California, defendants COMMUNITY FUELS, CHRISTOPHER YOUNG, and JEREMIAH YOUNG, all operators of a source located at 809-C Snedeker Avenue, Stockton, California, did knowingly: (1) tamper with and render inaccurate the monitoring devices and methods, which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring the pH level of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system; and (2) tamper with and render inaccurate the monitoring devices and methods,

which COMMUNITY FUELS was required to maintain under its permit issued by the City of Stockton, for measuring and recording the flow and volume of the industrial wastewater COMMUNITY FUELS discharged into the City of Stockton sewer system:

| COUNT | DATE |
|---|---|
| SIX | April 18, 2016 |
| SEVEN | April 21, 2016 |
| EIGHT | April 22, 2016 |
| NINE | May 4, 2016 |
| TEN | July 21, 2016 |
| ELEVEN | July 26, 2016 |
| TWELVE | November 19, 2016 |
| THIRTEEN | December 1, 2016 |

All in violation of Title 33, United States Code, Sections 1317(d), 1319(c)(4), and Title 18, United States Code, Section 2(a) and (b).

COUNT FOURTEEN: [33 U.S.C. §§ 1317(d), 1319(c)(2)(A); 40 C.F.R. § 403.5(b)(2); 18 U.S.C. § 2(a) and(b) – Unlawful Discharge of Industrial Wastewater]

The Grand Jury further charges: T H A T

AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS, and
CHRISTOPHER YOUNG, and
JEREMIAH YOUNG,

defendants herein, as follows:

1. Paragraphs 1 through 20 of Count One are realleged and incorporated herein, as if fully set forth.

2. On or about July 21, 2016, in San Joaquin County, within the State and Eastern District of California, defendants COMMUNITY FUELS and CHRISTOPHER YOUNG, and JEREMIAH YOUNG, all operators of a source located at 809-C Snedeker Avenue, Stockton, California, did knowingly operate the source, and cause the source to be operated, in such a manner as to discharge, and cause to be discharged, pollutants, namely, industrial wastewaters that had a pH of less than 5.0 from the business premises located at 809-C Snedeker Avenue, Stockton, California, into the blowdown tank

INDICTMENT

10

1  designated Tank 511 that discharged into the City of Stockton sewer system, in violation of a National Pretreatment Standard, all in violation of Title 33, United States Code, Sections 1317(d) and 1319(c)(2)(A); Title 40, Code of Federal Regulations, Section 403.5(b)(2); and Title 18, United States Code, Section 2(a) and (b).

COUNT FIFTEEN: [33 U.S.C. §§ 1317(d), 1319(c)(2)(A); 40 C.F.R. § 403.5(b)(2); 18 U.S.C. § 2(a) and (b) – Unlawful Discharge of Industrial Wastewater]

The Grand Jury further charges: T H A T

AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS,
CHRISTOPHER YOUNG, and
JEREMIAH YOUNG,

defendants herein, as follows:

1. Paragraphs 1 through 20 of Count One are realleged and incorporated herein, as if fully set forth.

2. On or about December 1, 2016, in San Joaquin County, within the State and Eastern District of California, defendants COMMUNITY FUELS, CHRISTOPHER YOUNG, and JEREMIAH YOUNG, all operators of a source located at 809-C Snedeker Avenue, Stockton, California, did knowingly operate the source, and cause the source to be operated, in such a manner as to discharge, and cause to be discharged, pollutants, namely, industrial wastewaters which had a pH of less than 5.0 from the business premises located at 809-C Snedeker Avenue, Stockton, California, into a floor cleanout drain that discharged into the City of Stockton sewer system, in violation of a National Pretreatment Standard, all in violation of Title 33, United States Code, Sections 1317(d) and 1319(c)(2)(A); Title 40, Code of Federal Regulations, Section 403.5(b)(2); and Title 18, United States Code, Section 2(a) and (b).

COUNT SIXTEEN: [18 U.S.C. §§ 1001(a)(2); 18 U.S.C. § 2(a) and(b) - False Statements]

The Grand Jury further charges: T H A T

AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS, and
CHRISTOPHER YOUNG,

defendants herein, as follows:

At all times material to this Indictment:

1. Paragraphs 1, 2, 4 through 20 of Count One are realleged and incorporated herein, as if fully set forth.

2. On or about December 1, 2016, in the County of San Joaquin, and on or about January 26, 2017, in the County of El Dorado, both within the State and Eastern District of California, in a matter within the jurisdiction of the EPA, an executive branch of the Government of the United States, defendants AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS, and CHRISTOPHER YOUNG did knowingly and willfully make material false oral statements to the EPA, an agency responsible for administering the Clean Water Act, in recorded interviews.

3. Specifically, CHRISTOPHER YOUNG represented to the EPA that, after he and COMMUNITY FUELS became aware of the unlawful disposal of wastewater into the City of Stockton sewer, he and COMMUNITY FUELS' staff went through the company's engineering process and found what was wrong. CHRISTOPHER YOUNG maintained that the process was designed right, but it had a human component to it that if they did not switch valves correctly then unpermitted wastewater could go down the drain into the sewer. CHRISTOPHER YOUNG went on to explain that what happened on July 21, 2016, is that employees were trying to salvage oil from Tank 116 by pumping it through the overhead line to the wash column, but the employees were being lazy and mistakenly left some valves open that allowed the salvaged oil to instead go to blowdown Tank 511 and then into the sewer. Young said the information from the July 21, 2016, inspection by the City of Stockton water regulators was the first he knew of the illegal wastewater dumping at the COMMUNITY FUELS facility. Young explained that, after the July 21, 2016 inspection, he put safeguards into place make it impossible for an illegal wastewater discharge to ever happen again as, he found the problem and corrected it, and there is no physical way to illegally discharge wastewater. In truth and fact, defendants COMMUNITY FUELS and CHRISTOPHER YOUNG knew that: (1) the discharge of industrial wastewater from Tank 116 into the City of Stockton sewer system was planned, intentional, and consistent with COMMUNITY FUELS' longstanding, recurring practice, pursuant to CHRISTOPHER YOUNG's orders, to unlawfully discharge COMMUNITY FUELS' industrial wastewater into the City of Stockton sewer system, in violation of COMMUNITY FUELS' wastewater discharge permit issued by the City of Stockton and the Clean Water Act; and (2) subsequent to the July 21, 2016, inspection, CHRISTOPHER YOUNG

1  directed defendant JEREMIAH YOUNG by email sent on July 26, 2016: "Also since the city is not
2  going to show up this late if you can Jerry rig a way to get waste water out the sewer and modify pH
3  meter and FiT [water flow monitor] before you do it and then set them back so James is not the wiser
4  then go for it . . . ." (Bracketed text added.)

5  All in violation of Title 18, United States Code, Section 1001(a)(2), and Section 2(a) and(b).

6  COUNT SEVENTEEN: [18 U.S.C. § 1512(b)(3) - Witness Tampering]

7  The Grand Jury further charges: T H A T

8  CHRISTOPHER YOUNG,

9  defendant herein, as follows:

10  At all times material to this Indictment:

11  1.    Paragraphs 1, 2, 4 through 20 of Count One are realleged and incorporated herein, as
12  if fully set forth.

13  Between on or about the December 1, 2016, through on or about December 8, 2016, in the
14  County of San Joaquin, State and Eastern District of California, defendant CHRISTOPHER YOUNG,
15  did knowingly attempt to corruptly persuade a witness by directing the witness, when interviewed by the
16  EPA, to: (1) not say anything to the EPA regarding COMMUNITY FUELS' unlawful disposal of
17  wastewater into the City of Stockton sewer; (2) just say any wastewater that was released was a mistake
18  by JEREMIAH YOUNG not closing certain valves; (3) play stupid and pretend to not know anything;
19  (4) minimize any responses and only say COMMUNITY FUELS discharged wastewater, but fixed the
20  wastewater discharge problem; and (5) maintain that COMMUNITY FUELS did not ever dump
21  wastewater; all with the intent to hinder and prevent the communication to a law enforcement officer of
22  information relating to the commission of Federal offenses, to wit: conspiracy, in violation of Title 18,
23  United States Code, Section 371; tampering with monitoring equipment, in violation of Title 33, United
24  States Code, Sections 1317(d) and 1319(c)(4); and unlawful discharge of industrial wastewater, in
25  ///
26  ///
27  ///
28

INDICTMENT                                13

1  violation of Title 33, United States Code, Sections 1317(d) and 1319(c)(4), and Title 40, Code of
2  Federal Regulations, Section 403.5(b)(2).
3       All in violation of Title 18, United States Code, Section 1512(b)(3).

A TRUE BILL.

/s/ **Signature on file w/AUSA**

_____
FOREPERSON

_____
McGREGOR W. SCOTT
United States Attorney

INDICTMENT                          14

No. _____

2:18-CR-0068 KJM

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA

*vs.*

AMERICAN BIODIESEL, INC., dba COMMUNITY FUELS,
CHRISTOPHER YOUNG, and
JEREMIAH YOUNG

## INDICTMENT

**VIOLATION(S):** 18 U.S.C. § 371 - Conspiracy; 33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and (b) - Tampering with Monitoring Equipment (12 Counts); 33 U.S.C. §§ 1317(d), 1319(c)(2)(A); 40 C.F.R. § 403.5(b)(2); 18 U.S.C. § 2(a) and (b) – Unlawful Discharge of Industrial Wastewater (2 Counts); 18 U.S.C. § 1001(a)(2) – False Statements; 18 U.S.C. § 1512(b)(3) - Witness Tampering

*A true bill,*   **/s/ Signature on file w/AUSA**

_____
*Foreman.*

*Filed in open court this* _____ *day*

*of* _____, *A.D. 20* \_\_\_\_\_

**NO BAIL WARRANT PENDING HEARING**
as to Christopher Young
Jeremiah Young

_____
*Clerk.*

*Bail, $* _____

_____

GPO 863 525

## United States v. Community Fuels, Christopher Young, and Jeremiah Young
### Penalties for Indictment

**Defendants**                    2:18 - CR - 0068 KJM

Community Fuels, Christopher Young, and Jeremiah Young

**COUNT 1:**         Community Fuels, Christopher Young, Jeremiah Young

VIOLATION:           18 U.S.C. § 371 - Conspiracy

PENALTIES:           Maximum 5 years in prison
                     Fine of up to $250,000; or both fine and imprisonment
                     3 years supervised release

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 2-5:**      Community Fuels, Christopher Young

VIOLATION:           33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and(b) -
                     Tampering with Monitoring Equipment

PENALTIES:           Maximum 2 years in prison
                     Fine of up to $250,000; or both fine and imprisonment
                     1 year supervised release

**COUNTS 6-13:**     Community Fuels, Christopher Young, Jeremiah Young

VIOLATION:           33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and(b) -
                     Tampering with Monitoring Equipment

PENALTIES:           Maximum 2 years in prison
                     Fine of up to $250,000; or both fine and imprisonment
                     1 year supervised release

**COUNTS 14-15:**    Community Fuels, Christopher Young, Jeremiah Young

VIOLATION:           33 U.S.C. §§ 1317(d), 1319(c)(2)(A); 40 C.F.R. § 403.5; 18 U.S.C. § 2(a) and(b) -
                     Unlawful Discharge of Industrial Wastewater

PENALTIES:           Maximum 3 years in prison
                     Minimum fine of $2,500, maximum fine of up to $250,000; or both fine
                     and imprisonment
                     1 year supervised release

**COUNT 16:**        Community Fuels, Christopher Young

VIOLATION:        18 U.S.C. § 1001(a)(2) - False Statements

PENALTIES:        Maximum 5 years in prison
Fine of up to $250,000; or both fine and imprisonment
3 years supervised release


**COUNT 17:**        Christopher Young

VIOLATION:        18 U.S.C. § 1512(b)(3) - Witness Tampering

PENALTIES:        Maximum 20 years in prison
Fine of up to $250,000; or both fine and imprisonment
3 years supervised release


SPECIAL ASSESSMENT: $100 (mandatory on each count)